## VALIDITY OF STREET IMPROVEMENT CONTRACT IN EXCESS OF ESTIMATE.

Superior Court of Cincinnati.

James A. McDonald, a Tax-payer, on Behalf of the City of Cincinnati, v. Charles F. Hornberger, Director of Public Service of the City of Cincinnati, et al.

Decided, December 26, 1918.

*Street Improvements—Contract for, Not Rendered Invalid—By Reason of Being in Excess of the Engineer's Estimate—Where No Statute Limits the Actual Cost to the Estimated Cost.*

1. A contract made by a municipality with the lowest and best bidder for a street improvement in full compliance with law as to all conditions precedent, with no averment of fraud, bad faith, irregularity, unreasonableness or excessiveness, is valid, notwithstanding the amount of said contract exceeds the city engineer's estimate.

2. Where the statute law does not limit or restrict the actual cost of a municipal street improvement to the estimate thereof by the engineer, the fact that the actual cost exceeds the estimated cost will not invalidate the contract.

*Saul Zielonka,* City Solicitor, for City of Cincinnati.
*Walter C. Taylor,* for Henkel & Sullivan.
*James A. McDonald,* contra.

Gusweiler, J.

This cause is before the court on a demurrer to the amended petition of plaintiff filed as a tax-payer on behalf of the city of Cincinnati against the director of public service of said city and others, in which it is contended that the proper officers of said city in full compliance with law as to conditions precedent entered into a contract on the 11th day of December, 1918, with certain of the defendants, who tendered the lowest and best bid for a certain proposed improvement of Freeman avenue, Cin-

cinnati, Ohio, for the sum of $111,523.50; that the engineer of said city, some time during January, 1918, made an estimate of the cost of said improvement in the sum of $103,634.50, being $7,889 less than the lowest and best bid aforementioned; that therefore the contract is illegal and in violation of plaintiff's rights as such tax-payer.

It is agreed that the sole question of law, at issue in the case at bar, is as to the validity of a contract entered into between a municipality and the contractor tendering the lowest and best bid for a street improvement in excess of the city engineer's estimate. The plaintiff admits that the city has complied with the law in every respect touching the various statutory conditions precedent to the entering into said agreement.

There is no charge of fraud, bad faith, irregularity, excessive or unreasonable cost concerning said accepted bid. The only point raised by plaintiff is that because the amount of the bid and contract in question exceeds the city engineer's estimate, the contract is for that sole reason illegal. It is not disputed that between the date of the engineer's estimate rendered and the date of the bids received, our country was in the midst of a world war, during which time labor and materials were continually rising in cost, which extraordinary condition explains the real reason for the difference in the amount of the engineer's estimate and the lowest and best bid.

This point has never been raised in our assessment law, and as far as we are able to observe, there are no reported decisions exactly in point in any of our courts in Ohio.

In the consideration of this question it is necessary to construe the following sections of the General Code:

"Section 3814. When it is deemed necessary by a municipality to make a public improvement to be paid for in whole or in part by special assessments, council shall declare the necessity thereof by special resolution, three-fourths of the members elected thereto concurring, except as otherwise herein provided. Such resolution shall be published as other resolutions, but shall take effect upon its first publication.

"Section 3815. Such resolution shall determine the general nature of the improvement, what shall be the grade of the

street, alley or other public place to be improved, the grade or elevation of the curbs, and shall approve the plans, specifications, estimates and profiles for the proposed improvement. In such resolution council shall also determine the method of the assessment, the mode of payment, and whether or not bonds shall be issued in anticipation of the collection thereof. Assessments for any improvement may be payable in one to ten installments at such time as council prescribes.

"Section 3816. At the time of the passage of such resolution, council shall have on file in the office of the director of public service in cities, and the clerk in villages, plans, specifications, estimates and profiles of the proposed improvement, showing the proposed grade of the street and improvement after completion, with reference to the property abutting thereon, which plans, specifications, estimates and profiles shall be open to the inspection of all persons interested.

"Section 3818. A notice of the passage of such resolution shall be served by the clerk of council, or an assistant, upon the owner of each piece of property to be assessed, in the manner provided by law for the service of summons in civil actions. If any such owners or persons are not residents of the county, or if it appears by the return in any case of the notice, that such owner can not be found, the notice shall be published at least twice in a newspaper of general circulation within the corporation. Whether by service or publication, such notice shall be completed at least twenty days before the improvement is made or the assessment levied, and the return of the officer or person serving the notice, or a certified copy of the return shall be *prima facie* evidence of the service of the notice as herein required.

"Section 3825. If the council decides to proceed with the improvement, an ordinance for the purpose shall be passed. Such ordinance shall set forth specifically the lots and lands to be assessed for the improvement, shall contain a statement of the general nature of the improvement, the character of the materials which may be bid upon therefor, the mode of payment therefor, a reference to the resolution theretofore passed for such improvement with date of its passage, and a statement of the intention of council to proceed therewith in accordance with such resolution and in accordance with the plans, specifications, estimates and profiles provided for such improvement.

"Section 3901. If in any such action is appears that by reason of any technical irregularity or defect, whether in the proceedings of the council, or any other officer of the corporation, or in

the plans or estimates, the assessment has not been properly made against any defendant or upon any lot or parcel of land sought to be charged, the court may nevertheless on satisfactory proof that expense has been incurred which is a proper charge against such defendant, or lot or parcel of land in question, render judgment for the amount properly chargeable against such defendant or on such lot or land, but in such cases the court shall make such order for the payment of the costs as may be deemed equitable and proper.

"Section 3909. If an assessment proves insufficient to pay for the improvement and expenses incident thereto, the council may, under the limitation prescribed for such assessment, make an additional pro rata assessment to supply the deficiency. In case a larger amount is collected than is necessary, it shall be returned to the persons from whom it was collected, in proportion to the amounts collected from such persons respectively. This section shall be subject to the limitations contained in other sections of this chapter.

"Section 3911. Proceedings with respect to improvements shall be liberally construed by the councils and courts, to secure a speedy completion of the work, at reasonable cost, and the speedy collection of the assessment after the time has elapsed for its payment, and merely formal objections shall be disregarded, but the proceedings shall be strictly construed in favor of the owner of the property assessed or injured, as to the limitations on assessment of private property, and compensation for damages sustained."

There is no statute in Ohio prohibiting a municipality from letting a contract for a street improvement at a price in excess of the preliminary estimate of the engineer. It would seem if the Legislature had intended that the preliminary estimate should be the maximum price at which the contract could be let, it would have expressly so declared, as it has done (in Section 6956 of General Code) with reference to the construction of state and county improvements. That section reads, in part, "No contract shall be let for more than the estimated cost of the improvement." A similar provision is found in Section 2323, General Code, which is that, "No contract shall be made for labor or materials at a price in excess of the entire estimate thereof." A like provision is found in Section 2358, General Code:

"Section 2358. No contract shall be made for a public building, bridge or bridge structure, or for any addition to, change, improvement or repair thereof, or for the labor and materials herein provided for, at a price in excess of the estimates required to be made by the preceding sections."

A careful comparison of the sections of the General Code referred to and those relating to municipalities leads to an obvious conclusion that it was not the intention of the Legislature to limit the engineer's estimate as being the maximum amount of the contract.

It would seem to follow that the sole purpose of requiring an estimate was to determine approximately the cost of the contemplated improvement.

Webster defines the noun "estimate" as follows:

"A valuing or rating especially from incomplete data; A rough or approximate calculation, as an estimate of the cost of a building."

Apparently the estimate being an approximation merely, the real cost, when bids are opened, may be lower or higher depending upon the accuracy of the calculation and upon whether the price of labor and materials has fluctuated either up or down between the time of the making of the estimates and the time the bids were opened.

The fact that there is not statutory restriction against municipalities letting contracts in excess of the engineer's estimate would naturally indicate that the word "estimate," as used in the sections relative to municipalities means that the sole purpose of the estimate was to advise both the city officials and the property owners of the approximate cost.

For the past year or more during these war times, by common knowledge, we know that the prices of labor and materials have been constantly increasing. It would doubtless be almost impossible for any engineer upon a given day to give an estimate that would accurately foretell what the exact cost of the construction would be at the time bids were opened. For the engineer to add to the amount of his present estimate an arbitrary

amount to cover probable fluctuations in the price of labor and materials until the time of the letting of the contract, would be to enter the realm of conjecture. Under the conditions of our country at present and for some time past, every reasonable person necessarily knows that when an estimate has been made, it has been subject to the increase by the daily changes in the market prices.

We are of the opinion that if notice of the resolution is served on the owner and the estimate of the engineer is on file together with the plans and specifications for the proposed improvement, he will have no valid legal complaint if such estimate is subsequently exceeded in the actual letting of the work, especially where the cost is reasonable and fair, and there is no fraud or bad faith charged.

After all, the estimate doubtless, is merely an approximate calculation to give the property owner an idea of what the improvement is going to cost. Without a statute expressly limiting the cost to the estimate, it can not fairly be said that the construction to be placed upon the estimate should serve the purpose guaranteeing to the property owner that the actual cost would not exceed the amount of such estimate.

While the law of Ohio is silent on the issue in the instant case, we are not without abundant authority throughout the United States holding as we do that, where the statute law does not prohibit the letting of contracts for street improvements at a cost in excess of the preliminary estimate, the fact that the actual cost exceeds such estimate does not invalidate the contract.

In the case of *Kelley* v. *Morton,* 179 Mo. App., 296, the court say:

"Where the city charter does not limit or restrict the actual cost of the street improvement to the estimate thereof by the engineer, nor provide that the bills shall be invalid if the estimate is not accurate, the fact that the actual exceeds the estimated cost will not invalidate the tax. Under such a charter or statutory provision, the estimate is advisory merely. It would be unjust in such case to deprive the contractor of the rewards of his work, after he had honestly and faithfully performed his

contract, merely because the advice given by the city's engineer
was not accurate."

The court say on page 298:

"There is nothing in the statute saying that the actual cost
shall not exceed the estimate; nor does it say that the estimate,
if not accurate, will invalidate the tax bills. The accuracy of
the estimate is not a condition precedent to the letting of the
contract. *Probert* v. *Garth,* 155 Mo. App., 1, c. 390. In that case
Ellison, J., in speaking of the objection that although the area
had been greatly reduced, still the actual exceeded the estimated
cost, said: 'This goes to show that the estimate was a poor one,
but we do not see how it can affect the validity of the tax bills.
There are cases holding bills to be void if the work was let at
a price in excess of the estimate, but those were where the work
was done in cities whose charters forbid contracts in a sum be-
yond the estimate. No such restriction appears in the charter
of cities of the second class, to which St. Joseph belongs.' "

Where the statute does not restrict the amount of the final
estimate to the amount of the preliminary estimate, the latter is
advisory merely. 2 Page & Jones on Taxation by Assessment,
Section 819.

Being advisory only, it can not, by reason of its being a
poor or inaccurate estimate, render invalid an assessment. Of
course, where the statute in express terms prohibits the letting of
a contract for public improvement in excess of this estimated
cost, a different question is presented and decisions based on
such statutes are not applicable. *State, ex rel,* v. *Bates,* 235 Mo.,
1, c. 283.

In the case of *Vincent* v. *South Bend* (Supreme Court of Wash-
ington), 145 Pacific, 452, the statute provided that at the time of
the initiation of the improvement, the city council shall cause an
estimate to be made of the cost and expense incident to the im-
provement, which estimate shall be approved by the city council.
The second paragraph of the syllabus is as follows:

"An assessment for a local improvement, although greatly in
excess of the estimated cost, is not void where the assessment did
not exceed the benefits and was no more than the *bona fide* cost

of the improvement; it appearing that the improvement was more expensive than expected, owing to the refusal of the federal government to assist, as had been expected.''

The court say at page 453:

''The only purpose of this estimate is to influence the city council in determining whether it will initiate any improvement; the right of the property owner to be determined by the actual *bona fide* cost of the improvement which, when it exceeds the estimated cost, can only be assessed against the property benefited after due notice and hearing, at which time all the rights of the property owner may be protected. The amount of excess is large in this case, but there is no showing that the excess amount does not represent the actual *bona fide* cost of the improvement. In fact, there is no attempt to make such a showing; it being conceded so far as the record goes that the ultimate cost was the *bona fide* actual cost. The excess is actually accounted for when it is understood that, instead of being made at a nominal cost, as was first contemplated under the arrangement with the government engineers, it was necessary to make the arrangements with private contractors to build the work that should have been undertaken and completed under the contract with the government engineers, thus largely increasing the cost of the improvement, but not increasing the assessment beyond the actual *bona fide* cost of the improvement. Such an assessment is valid.''

In the case of *Inner-Circle Property Co.* v. *Seattle,* 69 Wash., 508, the first paragraph of the syllabus is as follows:

''The fact that the actual cost of an improvement exceeds the original estimate does not affect the power of the city council to levy an assessment upon property to the extent of benefits received, within the limit allowed by law, where the estimate required by the charter was made by the Board of Public Works to enable the council to act advisedly in ordering an improvement within the fifty per cent. limit of the assessed valuation, and no notice to the property owners or hearing upon the amount of the estimate was required to be given.''

In *Moran* v. *Jersey City,* 58 N. J. L., 148, the court say:

''The preliminary assessment was made before any of the work of the improvement was commenced, and was only an

estimate made upon what was perceived on the surface of things to give the property owners a general knowledge of the approximate expense of the improvement, but the cost of the work was increased by unforeseen and unavoidable difficulties in its progress. The work proved to be of a somewhat different character from that anticipated. The preliminary estimate of the expense can not be allowed to control absolutely the commissioners in their final assessment.

"Neither the city charter of Jersey City, nor any other statute authorizing an assessment of this character provides that the preliminary estimate or assessment shall govern the commissioners in making their final assessment. This may be the case as to the final assessment of the cost of the formal opening of the street, but it is not applicable to an assessment for the improvement of the character now under review. Pamph. L., 1871, page 1094. This objection to this assessment can not prevail."

In the case of ue v. *Town*, 38 N. J. L., 419, the court say, at p. 420:

"The first reason assigned is based upon the fact that according to a calculation which the engineer made upon the basis of the contractor's prices, as applied to the estimated quantities of work before the improvement was begun, the cost was about $28,038.45. But at the close of the work the cost was found to be $35,854.13 which, with interest and the incidental expenses, raised the total amount assessed to $44,-002.41. This preliminary estimate of cost was made for no other purpose than to enable council to determine who was the lowest bidder, and the evidence indicates that its error arose chiefly from the fact that more rock was found at the grade than was anticipated, and therefore it became necessary to excavate over a large portion of the street, to a depth of eighteen inches lower than at first expected, in order to secure an earthy surface for the roadway. Under these circumstances, and the absence of any fraud, the municipality ought not to be estopped by such estimate and precluded from imposing on those whose property was benefited, the real cost of the work, to the extent of their constitutional liability."

In the case of *Sheridan* v. *Fleming*, 93 Mo., 321, the court say, at p. 324:

"There is nothing in the act which limits the amount to the estimate first made by the commissioners. The law does not contemplate that they must, in the first instance report the *exact* amount of the work. It would be impossible for them to do this, for they must pay for the service, condemnation of property and the like, all of which expenses must be paid out of the fund. *Neither these expenses nor the cost of the work can be ascertained with accuracy in advance.*"

In the case of *Auditor General* v. *Chase*, 132 Mich., 630, the court say, at p. 632:

"In September, 1898, the annual appropriation bill did give notice of an intention to pave Saginaw street, between Jackson street and Oakland avenue at a cost estimated at $40,000. Subsequently the expenses turned out to be some $70,000, of which the city assumed to pay something over $20,000, leaving merely $50,000 to be raised by special assessment. It is contended that the council did not have jurisdiction to levy in excess of $40,000 in a special assessment for the purpose mentioned. We contend that this statute is susceptible of this construction. The fact that council intended to enter upon the work is sufficiently set out in the annual appropriation bill, and the fact that it turned out later that the expense of the improvement was greater than anticipated does not make it necessary for the city to wait another year before entering upon the contemplated work."

Plaintiff's contention is that in letting this contract for a sum in excess of the engineer's estimate, his rights under the United States and the Ohio Constitution are invaded in that property is being taken without due process of law; that it is a jurisdictional prerequisite on the part of the city to let said contract within the sum set out in the estimate and that the purpose of the notice served upon the property owners is to advise them of the maximum cost, etc.

With these conclusions we do not agree. We think it is clear from what has been said that unless there is something in the nature of the estimate required to be made and approved by council as a part of the initial step looking toward the levying of special assessments which give rise to some rights on the

part of the owners of the property to be assessed, there is nothing to prohibit the proper municipal authorities from letting a contract for street improvement at a price in excess of that fixed in the estimate. In other words, there is no public right which could be enforced by general tax-payers of the city which would be violated by such action on the part of the proper authorities.

Nor are we able to see that there is any private right arising in favor of the owner of property which is to be assessed that would be violated by so letting the contract. True, he has notice that the estimated cost of the construction work of the improvement is to be a certain figure. But in the absence of a statute limiting the actual construction cost to that estimated we do not see how it could be argued that he would have a right to expect that the actual cost of the construction would be so limited. Unless there is something in the very nature of the estimate which makes it without the express language contained in the sections to which we have referred, a limitation on the amount of the contract or on the amount thereof which is to enter into the assessment, the property owner's knowledge of the amount of the estimate would carry with it as a necessary implication the correlative knowledge that it is but an estimate—a guess—and that there is nothing in the law which would prevent its being exceeded by the actual cost of the construction work.

The statutes make it perfectly clear that at the very most the estimate is not a limit on the amount which can be assessed because:

*First.* Many other items of the cost of the improvement are included in the total cost which is to be assessed.

*Second.* The council need not assess the entire cost of the improvement nor even the maximum proportion thereof which by law it is permitted to assess, and there is nothing in the statutes requiring council to decide at the time it passes the resolution of necessity or even at the time it passes the ordinance determining to proceed with the improvement, that it will assess any definite proportion of the total cost.

*Third.* It is perfectly clear that so long as the essential character of the improvement is not changed, supplemental contracts may be entered into, the effect of which may conceivably be to change the total cost of construction. Indeed, this power to modify the original contract shows that not only may the estimate be exceeded by its exercise, but the plans and specifications themselves may be changed thereby so long as what is substantially a different improvement does not result therefrom.

All these things the owner of property to be assessed who has been served with notice of the passage of the resolution, of necessity must be deemed to know in a legal sense. He does, however, have a right to believe that the amount fixed in the estimate has been fixed in good faith and that it represents an honest effort on the part of the officers of the municipality to advise property owners to be assessed of the probable cost of the improvement, but in the state of the statute laws applicable to municipal assessments, it can not be regarded as an assurance to him that the work will not cost more than that amount.

From a consideration of the foregoing authorities, and in view of the fact that there is no statute in Ohio prohibiting municipalities from letting contracts for street improvements at a price in excess of the preliminary estimate referred to in Section 3815 of the General Code, we are of the opinion that if upon a letting of a contract for street improvements the bids exceed the amount of the preliminary estimate of the engineer, this of itself would not invalidate the assessment levied against the property owners.

It follows that the demurrer will be sustained and the petition dismissed at plaintiff's costs.